May it please the Court, my name is Sean Unger and on behalf of Paul Hastings I represent Israel Discount Bank. The Foreign Sovereign Immunities Act is a rule of absolutes and burden shifts. First, when a foreign state is sued in the state courts of the United States, it has an absolute right of removal. Do we have any factual background to prove the facts necessary to establish that you are a foreign entity? Yes, Your Honor. At page 407 of the record, there is a declaration submitted by Louis Alster proving that greater than 50% of Israel Discount Bank was owned by the foreign state at the time. How does it prove it? How does it demonstrate it? It's just his declaration. Well, under the Foreign Sovereign Immunities Act, all a foreign state has to do is make a prima facie showing, so the declaration itself is sufficient. But there's no finding of fact on that point for us to review? There doesn't need to be, Your Honor. Well, how do you establish the premise for taking the position you do? You see, Judge Pegerson just acted a little bit precipitously, didn't he? Well, he did, Your Honor. But because — Why shouldn't we send it back and have him do it right? Well, because the question of subject matter jurisdiction under the Foreign Sovereign Immunities Act is an issue that this Court under Randolph has said will — the court of appeals will raise on its own. And so long — under the Foreign Sovereign Immunities Act, under the prima facie showing, which I would take the position that the declaration does, there is sufficient evidence to decide the subject matter jurisdiction question. You know, Counsel, I agree with my colleague, Judge Beezer, that we really can't — we're not fact-finders, and we can't act on presumptions. We have to — the trial court is the one that needs to decide that you are, in fact, a foreign state. Now, the question, I think, that we do have to decide before we can remand it is whether we have jurisdiction to review Judge Pegerson's remand. Well, that's two questions. And I'll respond to the jurisdiction question, but I'd like to come back to the foreign state issue. I would really like to hear the jurisdiction question. That's our preliminary question. Sure. Under Kelton Arms and under Lively, by sua sponte remanding all of the pending motions before Israel Discount Bank had an opportunity to respond to the motion to remand, under Thermtrom, Kelton, and Lively, this Court has appellate jurisdiction to send it back for consideration on the merits, but not of the remand question. This Court has an independent obligation to determine whether or not the remand was sufficient, which goes back to the foreign state question, because on the basis — for purposes of removal a foreign state, just like with subject matter jurisdiction, only has to make a prima facie showing. Now, I can understand the Court's concerns with respect to subject matter jurisdiction, but the Court should address the question of the propriety of removal by the foreign state. Well, the only basis you have for removal is in a counterclaim, right? That's correct, Your Honor. How does the counterclaim fit within the statutory scheme? Under 28 U.S.C. Section 1441D, the unique foreign state removal section under the Foreign Sovereign Immunities Act — Does that refer to counterclaimants? No. It says any action brought against a foreign state. Under EIE-Guam, this Court allowed a third-party defendant, foreign state, to remove after it acquired an interest in the party when the litigation was pending in the state court. Indeed, in Tel-Adin, this Court held that the general rules of removal do not apply, and in Security Pacific National Bank v. Der Derian, this Court noted that the foreign state has a guaranteed right of removal. The courts that have addressed the question, including the Supreme Court and Verlinden, have read the right of removal engendered to a foreign state broadly, including a counterclaim defendant. Has — under California law, is a counterclaim an action? California actually doesn't — no longer recognizes a counterclaim. It's treated as a counterclaim in this action. California law only has cross-claims. Right. But under Douglas, a cross-claim is deemed a separate civil action. Under which case? Because I wasn't able to find anything on that. Which case — Douglas v. Superior Court. Okay. So that says that a cross-complaint is a separate civil action. So let me ask you something. The particular action that Israel Bank filed in California is an action just to enforce a foreign judgment under this California statutory scheme, right? Correct. Now, as an initial matter of original jurisdiction, would the Federal District Court have had jurisdiction over that action? No. Right. So your client had to — was forced — I mean, it's only — the only way it could enforce its judgment was by filing in state court. So you might argue that you didn't know — waive your right to be in federal court or that you didn't — that you — you're sort of there haplessly and helplessly, that that's the only remedy you have. Correct. So then you get the cross-complaint against you, which — over which a Federal court would have original jurisdiction if you are a foreign state under the Foreign Sovereign Immunities Act. Correct. Okay. Now, you remove the entire action, however, under the removal — you removed or purported to remove the entire action under the removal statute. Correct. Now, how does the Federal court have jurisdiction over the original action you brought? Under this Court's analysis in Tel-Adin, once a foreign state has a claim brought against it, the original jurisdiction extends subject matter jurisdiction over the entirety of the case. Indeed, Israel Discount Bank, under our understanding of California law, was required to remove the entire case. But did the Federal court enforce your prior judgments in the state of California? Yes. It — the reason that there wasn't original subject matter jurisdiction in the Federal court is that Israel Discount Bank is a foreign state, and Moshe Schnapp is also an Israeli citizen. And under the diversity statutes, a foreign state can only bring an original action against a resident of the state. But under — were Moshe Schnapp to have been, let's say, a citizen of the United States, Israel Discount Bank could have brought its proceeding on the basis of diversity in the Federal court, and the Federal court could have enforced the Uniform Foreign Judgment — Foreign Money Judgment Recognition Act. Which is a Federal act, not the state — State act. There is no Federal act. The Federal courts borrow the state laws. Okay. So the Federal court could have had Moshe been a citizen of the United States — Correct. — and Moshe Schnapp a citizen of Israel. Well, doesn't the Federal court have to have original jurisdiction in order for it to have removal jurisdiction? It only has to have original jurisdiction over the counterclaim. There's an Eleventh Circuit case, which I'd call your attention to. It's an FDIC case versus a terrible last name. It's S-I-85, and then it goes on for a while. That confirms that a counterclaim can provide original jurisdiction. And then — That's a different statute. That is a different statute. But — Well, it's not clearly in terms of comparison to 1441A. The FDIC removal statute doesn't use the word defendant, nor does the Foreign Sovereign Immunities Act removal statute. But what — addressing your concern, the court of appeals are uniform that a third-party foreign state defendant has a right to remove a case, even though there wouldn't otherwise be original jurisdiction. The Armada-Hess case, I believe — excuse me, no, the — Berlin. What's that? The — Berlin, but that's — The Weltover case confirms that that satisfies the arising under Article III jurisdiction. Are we absolutely certain that the district court acted sui sponte? Yes. And the reason for that is, is that it vacated the — it vacated — I'm a little bit precipitous, you know, a bit as Jeshua Meathers, and we've acted a little bit too quickly, but there was a motion filed to remand. And there's no question about that. It raised all the same arguments that he relied upon. And he didn't strike the motions from the file. All he did was vacate the hearing date. And then he granted — you know, he remanded it. I would — I would disagree. At 435 of the record, he vacated the motions. And he says — You have to read it very carefully, but he vacated — as I understood it, he vacated the hearing date. Well, I would read it somewhat differently. And the reason that I would read it somewhat differently is that — I have the order here someplace in my — At 435 and 437 of the record is where it's at. And I would read the first sentence of the Court's first motion at 435, where it explains on the Court's own motion — First order. It's vacating all of the motions. And it explains when the date was set. And then you read 437, which is the actual remand order itself, and the Court nowhere mentions the filing of a motion, nowhere mentions that it's considering the motions, and instead, in the last sentence, explains that the Court is remanding the action to State court. Moreover, under Kelton Arms and under Lively, the analysis is not just the question of propriety, but the question of air and the opportunity of the opposing party to make a response, which we were denied here. I don't mean to, you know, to argue with you or anything, but this is important as far as I'm concerned. Okay. At least how you view what the district court did. Okay. But if you go to the docket and the minute entry, entry number 21, the docket, the clerk recording what the district court did that day on 2106, the minute order identifies all the motions, and it notes that it was set for hearing on March 6th at 10 a.m., and it goes on to say, are hereby vacated, which if you were on the — served on the district court, you know what they're saying, vacated. What they're really talking about is vacating the hearing date. Well, then they're still pending and unresolved. Well, the motion, but by remanding it for the same reasons stated in the motion to remand, one could construe what the district court did was nothing more than grant the motion to remand and send it back. I want to save a little bit. If that's the case, then, you know, we don't have any jurisdiction. Well, I want to save a little bit of time for rebuttal, but I want to respond to the point, and I would say that we should go with the face of the order itself and the policy purposes of Kelton Arms, which is to give a party asserting removal and here we specifically invoked 1441d, the opportunity to explain that removal. I understand, but, you know — But on the face — I think Judge Beezer hit it on the nose, which is he acted a bit precipitously, but I don't know that that doesn't mean you couldn't construe what he did as acting properly. I'm not — I don't mean to say I've decided the case or anything, but I — there's different ways of looking at this record about what happened. Well, I would go with the face of the order itself. If you want to save time, I would suggest you put your opposing counsel time to argue. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Mona Miller, Donfeld, Kelley, and Rollman for appellee Moshe Schnapp. We believe there are just two issues before the Court this morning. Whether there's appellate jurisdiction to even hear an appeal of an order remanding the case to State court, and if there is appellate jurisdiction, did the district court make the right decision in remanding the case to State court? I think substantial clear-cut U.S. Supreme Court and Ninth Circuit authority make it very clear that there isn't any appellate jurisdiction over this remand order. And it doesn't matter whether you have a very novel statute, whether the remand is coming up from the Foreign Sovereign Immunities Act, from the Securities Litigation Uniform Standards Act, from the Class Action Fairness Act. It's very clear from Kircher, from what the Ninth Circuit said in Abbata, whatever the source, remand orders are not appealable except in a very limited class of cases. And this isn't one of them. This is not an FDIC case. This is not an RTC case. This is not a civil rights case. Quite recently, last week, the Ninth Circuit again focused on precisely this type of analysis. We all know that Federal jurisdiction, including Federal appellate jurisdiction, is limited. In Aguillan-Schulte, copies of which I provided to your clerk just last week, Circuit Judge Pragerson issued a short, sweet opinion noting the limits on appellate  It's not a sua sponte type of action. We are not trying to do some type of violence to this Court's holding in Lively or Kelton. We're not disagreeing with Lively or Kelton. Indeed, Lively noted notes that in the Ninth Circuit, typically when you're talking about a procedural error or procedural defect, you're talking about something modal, something in terms of timing, a filing deadline, for example. This is not. We're talking about statutory construction here, whether there was the power for the Federal court to take this case at all. And as the Court has aptly noted, there was no original jurisdiction at all for the case, and there was no removal jurisdiction. Congress knows the difference between an action, a counterclaim, a civil proceeding. They know how to use these words in statutes. When they enacted the Foreign Sovereign Immunities Act in 1976, they were well familiar with the concept of a counterclaim. They were also well familiar with the concept that only defendants could remove. That had been true for a hundred years. So if they had intended for foreign sovereigns who were defendants to be able to remove, surely they would have said so in the statute. It's not hard. Kennedy, do you concede that you're dealing with a foreign sovereign? Only for purposes of this motion. I do believe that's a factual matter. That is what we put in our motion to remand below, and that is what we said in the appeal. We do believe that's a factual issue, and we would be entitled to discovery on that issue. Right now, the Court is reviewing a purely legal question, de novo, and we agree that's the applicable standard. But that we did put that in the footnote in our brief. So, no, we're not making that concession except for purposes of this jurisdictional issue. We've never had an opportunity to do discovery on that. In fact, I'd like to point out that the whole reasoning behind the ban on appellate jurisdiction as set forth in Shamrock Oil and as set forth in Kircher is to prevent delay. And this case has been afflicted by the very delay that the ban on appellate jurisdiction was intended to prevent. Israel Discount Bank filed its complaint in September of 2005. Mr. Schnapp's assets were subject to an attachment order. They're still subject to an attachment order. Well, you know, the — you're right, but district courts can act a bit precipitously. For example, in Lively, it was eight months after the case had been pending, and all of a sudden, the district court said, ah, this case doesn't really belong here. Nobody filed a motion, nothing. Well, nobody filed a motion. That's a critical distinction. And the district court just sent it back to State court, just clearly on its sua sponte, acting on its own. I think that is the critical distinction. So we there in Lively said, you know, well, you can't do a sua sponte remand unless it's for jurisdiction — essentially what we said, unless it's for jurisdictional purposes. The court has determined correctly that there is no subject matter jurisdiction. We're not disagreeing with you, Your Honor. First of all, we're saying it's a subject matter jurisdiction. We did say in an earlier case in Kelton Arms that the district courts can't exercise sua sponte authority. So it is important here just what the district court did. If the district court acted on its own, if you read the record that way, then you have — then it's a little bit more complicated about what really happened here. I think if you compare the — first of all, we try to explain very clearly in our papers exactly what happened. The motion to remand was sitting in the court for a week before the court issued its order. There's a correcting order in the docket because there's an incorrect file stamp on one of the entries. I think the court is correct in noting that they were vacating hearing gates. You'll note that — That's just my reading of the record. I don't mean to speak for anybody. It's just the way I — it's one way you could look at this. I believe it's a correct way of looking at it. Significantly, the wording of District Judge Pragerson's order in remanding the case is practically word-for-word lifted from the motion to remand. The suggestion of the party, which is a procedural posture that is clearly contemplated by Federal Rule of Civil Procedure 12, was made. This is not simply coming from the court. A party timely made within the 30 days a suggestion that there be a remand. When was your motion filed? The motion was filed in January, I believe, January 22nd or 23rd. When did Judge Pragerson issue the order to vacate the motions? February 1st or 2nd. And — okay, so there was a period of about a week or so? Yes. Well, he might not even have seen it, for all we know. I mean — Well, the wording suggests that he saw it, Your Honor, because he duplicated the wording and he cited the same authority. Or he did it on his own and he had his law clerk draft an order and that — there was, you know, language — The parallelism is extraordinary then. Well, no, I'm just saying that — okay, I have a separate — entirely separate question for you. Why isn't a — okay, what the Israel Bank is, is a cross-defendant to your cross-complaint. That is correct. Right? So why are we all hung up on whether the removal for F-S-I-A is — only allows removal for defendants if you can see that the bank is a cross-defendant, that's a form of defendant? Because the statute speaks of an action against. Had Congress intended for cross-defendants or a party in any capacity to be able to remove, they would have used different words from the words they used. The other reason I say that — No, I want to follow up. Okay? But — so this is a statute that applies in all 50 States, right? So was Congress supposed to look at how every single State treats a cross-defendant? Oh, not at all. I think — I think the bottom — I'm not finished with my question. Pardon me. You keep talking over us. Pardon me. And I think it's fair to have a conversation. But so are you saying Congress would have to negate every form of action brought against, say, excluding cross-complaints or whatever else any other State would call it or designated it? Because it seems to me what it did is by saying brought against, it expanded rather than eliminated. You see what I'm saying? I do understand your position, Your Honor. It's not a position. It's a question. Okay. This would be my response, Your Honor. In using the term action against and reading the Foreign Sovereign Immunities Act as a whole, I'd like to direct the Court to a few different places. First of all, when Congress enacted the Foreign Sovereign Immunities Act, it amended the diversity statute, and the amendment is discussed in footnote 5 of Argentine Republic v. Amarada-Hess. So what they did specifically was they provided for jurisdiction for plaintiff foreign sovereigns against citizens of states. And as explained in footnote 5 of the Argentine Republic v. Amarada-Hess case, they felt they had dealt with defendants in the removal provision. So they obviously thought actions against was for defendants. That's one step of the analysis. In other statutes, we see that they know how to use the term counterclaimant. For example, they use it in 1447F in the Tariff Act of 1930, which long precedes the Sovereign Immunities Act. So they know the term. If they wanted to use it, they would have used it. I have a question about that. Counterclaim is the word that's used in the federal civil procedure, and it's treated somewhat differently than California law treats a cross-complaint and a cross-defendant. So that argument doesn't seem to help, because Congress using a term that appears in the federal rules of civil procedure, it doesn't seem to apply to the California state and how it treats these actions. Well, even more fundamental, and this is noted in Shamrock and again noted in Kircher, the jurisdiction of the federal courts is not defined by the states. It's defined by federal law. It's defined by Congress. We don't go to the 50 states for definitions of how we fit into these jurisdictional boxes for purposes of federal jurisdiction. We go to a federal statute. Had Congress intended for a counter-defendant to be able to remove, it would have said so. It did not say so. I think we have to look at the language of the statute, and we don't look at the statute in little bites, as the Court says in Kircher. We have to be guided by the statute as a whole. And we also recognize that federal jurisdiction may be very peculiar. It may not be evenly balanced. And if Israel Discount Bank is disappointed because it couldn't file in federal courts to begin with because Mr. Schnapp is Israeli, its fight is with Congress, not with the courts and not with the law. That's the way the law is written. So what do you make of the argument that it should be, Congress intended this type of thing to be in the federal courts because then a judge would make the decision as opposed to a jury? What I would say, Your Honor, is that, first of all, there is no exclusive federal jurisdiction for actions under the Foreign Sovereign Immunities Act. And it's very important to remember that. In Verlinden, in the statute itself, state courts are just as competent to address questions under the Foreign Sovereign Immunities Act as federal courts. That doesn't answer my question. And in terms of the issue, it would be premature to discuss that. Judge Cherland, should the Court choose to remand the case to state court, will address the issue of whether or not this case has to be tried to a jury or must be tried to the court. What is your position on that? I think it would be premature and inappropriate for me to address that. I'm asking a good question. No, it's part of the analysis of whether this case belongs in federal court or state court. It is whether or not the Israel Bank is entitled to a jury trial or would be subject to a jury trial or a bench trial. So what is your position on that? I understand that there is case law that indicates that in actions against foreign sovereign instrumentalities, assuming arguendo, that Israel Discount Bank is in fact a foreign sovereign instrumentality, something we have never had an opportunity to do discovery on, they would be entitled to a bench trial. So you're conceding if this matter went to state court that it would be tried to Judge Cherland and you would not be asking for a jury? No, I am not conceding that, Your Honor, as to all causes of action. I attempted to respond to your question as fairly as I could under these circumstances, and in the end I was going to go back to the court and say, well,  it, because I think that the court would be able to hold its appeal respectfully. Well, it's just too bad that you have to answer my question whether you think it's premature or not, you know, because it's a question that I have about this case. Well, I certainly wish to be as forthright as I can, Your Honor.  Well, thank you. You're over your time now. If you have any further questions. Do you have any more time? I mean, any more questions? I have none. I have none. I don't have any more time either. Anyway. Okay. You have, you reserve some time, but it's only 2 minutes and 48 seconds, so. Thank you. Thank you, counsel. I do want to respond to a couple of points, specifically the language used comparing the shamrock analysis of 1441A and the FSIA analysis in 1441D. The trigger word in both is defendant. In 1441A, the word defendant appears, which is how the shamrock court got to the bar on counterclaim removal. But in 1441D, the word defendant doesn't appear. It is a foreign state with an action brought against it, however that is conceived. Second, oddly enough, in this particular law, Congress has deferred to the states in defining the terms. In a Fifth Circuit case called Delgado, the court looked to Texas law for the definition of action for purposes of reading into the 1441D analysis. And then lastly, I did want to speak just briefly about congressional intent. In EIE-Guam and in a series of cases throughout the other circuits, the courts have looked at the legislative history and confirmed that the purpose of 1441D was to allow for removal for cases involving foreign states, not just a foreign state defendant, but a foreign state counterclaim defendant, foreign state third-party defendant, and indeed every case to look at third-party defendant removal by a foreign state has permitted the removal. So here we're dealing with something different than shamrock. We can't rely on shamrock. It's a different rule. It's conceiving of a different statute. We have to look at the specific case law that's cited in our brief concerning 1441D. If there are no questions, that's all I have. Any more questions? No. All right. Thank you very much, counsel. Israel Discount Bank, Mr. Schnapp, is submitted and this session of the court is adjourned. All rise. This court for this session stands adjourned.  Thank you. Thank you. Thank you.
judges: Beezer, Wardlaw, Paez